IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

NOLAN LEVI STRAUSS,

    Defendant.

6:20-cr-00421-MC

**OPINION AND ORDER**

**MCSHANE, District Judge**

    Defendant Nolan Levi Strauss moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons stated below, Mr. Strauss's Motion is DENIED.

## BACKGROUND

    On December 21, 2019, Mr. Strauss entered an Arby's Restaurant in Ontario, Oregon and, unprovoked, stabbed Adult Victim 1 ("AV1") in the neck from behind. PSR ¶ 13–15, ECF No. 23. After AV1 broke free of Mr. Strauss's grip, a maintenance worker secured Mr. Strauss's hands behind his back and waited for the police to arrive. *Id.* ¶ 15. When the worker asked Mr. Strauss why he stabbed AV1, Mr. Strauss responded, "Because he was black, and I don't like black people." *Id.* AV1 was life-flighted to a hospital in Boise, Idaho for emergency surgery. *Id.* ¶ 20.

1 – OPINION AND ORDER

Mr. Strauss was arrested at the scene and charged with Attempted Murder II, Assault I, Bias Crime I, and Unlawful Use of a Weapon in the Malheur County Circuit Court. *Id.* ¶¶ 16, 41. He was committed to the Oregon State Hospital for competency restoration on February 19, 2020 and was deemed competent to proceed on April 27, 2020. *Id.* ¶ 59a. On September 17, 2020, Mr. Strauss was indicted for one count of a federal Hate Crime Act Involving an Attempt to Kill in violation of 18 U.S.C. § 249(a)(1)(B)(ii). Indictment, ECF No. 1. Mr. Strauss pled guilty to the federal charge. *See* ECF No. 20; Plea Agreement, ECF No. 21. As part of his plea agreement, the County District Attorney agreed to dismiss the state charges against Mr. Strauss if he was sentenced to more than 90 months imprisonment. Plea Agreement ¶ 5. The Government agreed to recommend a sentence no higher than 235 months. *Id.* ¶ 10. On September 9, 2021, this Court sentenced Mr. Strauss to 192 months of imprisonment. *See* ECF Nos. 28, 29. Mr. Strauss now challenges that sentence, arguing that the Court failed to conduct a competency hearing and he received ineffective assistance of counsel. Def.'s Mot., ECF No. 39; Def.'s Suppl. Mot., ECF No. 60; Def.'s 2nd Suppl. Mot., ECF No. 61.[1]

## **STANDARDS**

A prisoner serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). An evidentiary hearing is required, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). When there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

---

[1] Mr. Strauss's Supplemental Motion and Second Supplemental Motion appear to be duplicates.

**DISCUSSION**

Mr. Strauss asserts two claims: (1) the Court failed to hold a competency hearing prior to his guilty plea and sentencing; and (2) he received ineffective assistance of counsel.

**I. Competency Hearing**

Mr. Strauss appears to assert that the Court erred by not sua sponte holding a competency hearing prior to his guilty plea and sentencing.[2] Def.'s Mot., ECF No. 39. "Due process requires a trial court to hold a competency hearing sua sponte whenever the evidence before it raises a reasonable doubt whether a defendant is mentally competent." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997). "Competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense." *Id.* "When analyzing competence to plead guilty, [the Court] look[s] to whether a defendant has 'the ability to make a reasoned choice among the alternatives presented to him.'" *Id.* (quoting *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981)). Evidence of the defendant's irrational behavior, demeanor in court, and any prior medical opinions on his competence "may be sufficient to raise a reasonable doubt about competence." *Id.*

To the extent that Mr. Strauss argues he was incompetent when he entered his guilty plea, his claim is belied by the record. Mr. Strauss was admitted to the Oregon State Hospital on February 24, 2020 for competency restoration after a forensic evaluation determined he was not fit to proceed. Gov't Ex. 1, at 5–6, ECF No. 48. At the start of his hospitalization, Mr. Strauss was described as "disorganized and paranoid," and noted to make "statements to the nursing staff that were violent and psychotic in content." *Id.* at 6. The hospital began emergency medications

---

[2] Mr. Strauss's first § 2255 Motion appears to assert this claim. *See* ECF No. 39. In his Supplemental § 2255 Motion, Mr. Strauss did not raise this claim, instead only arguing that he received ineffective assistance of counsel. *See* ECF Nos. 60, 61.

3 – OPINION AND ORDER

at the time of his admission, including Haldol (an antipsychotic medication), Ativan (a sedative/antianxiety medication), and Benadryl (indicated for psychotic agitation). *Id.* About one month later, a hospital provider noted that Mr. Strauss was "doing relatively better," and was described as having "logical decision making when discussing his reasoning for not taking his case to trial." *Id.* at 7.

On April 27, 2020, Megan Wise, PsyD, evaluated Mr. Strauss and determined him competent to assist in his defense. *Id.* at 1. Dr. Wise found that "Mr. Strauss demonstrated adequate factual knowledge regarding the legal system and the ability to retain and integrate information provided." *Id.* at 10. She further found that "Mr. Strauss provided rational and reality based possible outcomes for his own case." *Id.* at 11. Dr. Wise determined that Mr. Strauss meets the criteria for Unspecified Schizophrenia Spectrum and Other Psychotic Disorder. *Id.* She opined that Mr. Strauss was "currently able to factually and rationally understand the nature of the proceedings, assist and cooperative [sic] with counsel, participate in his defense, and make relevant autonomous decisions." *Id.* Dr. Wise noted that Mr. Strauss's continued compliance with psychotropic medications was important to maintaining his competency. *Id.* at 11–12.

Mr. Strauss was again evaluated on December 29, 2020 at the request of his attorney for mitigation purposes. Gov't Ex. 3. After interviewing Mr. Strauss and reviewing relevant records, Alexander Millkey, PsyD, diagnosed Mr. Strauss with Schizoaffective Disorder, Bipolar Type, Alcohol Use Disorder, and Methamphetamine Use Disorder. *Id.* at 13. Though Dr. Millkey did not provide an opinion regarding Mr. Strauss's competency, he noted that when Mr. Strauss is "not on medications he appears to deteriorate rapidly, and when in a state of psychiatric decompensation, he has a tendency to act out in an aggressive manner." *Id.* at 15.

On June 10, 2021, one week before Mr. Strauss's change of plea hearing, defense counsel sent a letter alerting the Court to Mr. Strauss's mental health challenges. Gov't Ex. 2. Defense counsel wrote the following: "Mr. Strauss has been medication compliant since he was released from the Oregon State Hospital, and I feel confident he has been, and is, competent to proceed as of this writing." *Id.* at 1–2. Defense counsel also noted that Mr. Strauss had been hospitalized three months prior due to a suicide attempt. *Id.* at 2. As defense counsel explained, not "every suicide attempt inevitably creates a doubt concerning the defendant's competency." *Id.* (quoting *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318–19 (9th Cir. 1997)). Defense counsel assured the Court that he believed Mr. Strauss was "nevertheless competent to proceed." *Id.*

The Court began the change of plea hearing by noting previous mental health concerns and explaining to Mr. Strauss that the Court would ask him a series of questions to help determine whether Mr. Strauss was "clearheaded enough" to proceed. Change of Plea Tr. 5–6, ECF No. 49. The Court asked Mr. Strauss questions about his educational and employment background, as well as simple questions about the time of day and where the hearing was taking place. *Id.* at 6–7, 10–11. The Court also inquired into Mr. Strauss's mental health history. *Id.* at 7–9. Mr. Strauss stated that he was diagnosed as "schizoaffective with bipolar" in 2015. *Id.* at 7–8. He stated that he takes a number of medications for treatment, and that he consistently received the medications while in custody. *Id.* at 8–9. The Court found that Mr. Strauss was well oriented to time and place, that their "conversation ha[d] gone very well," and that Mr. Strauss "seem[ed] perfectly capable of going forward." *Id.* at 11.

The record shows that Mr. Strauss was restored to competency prior to his federal indictment and remained medication compliant throughout his criminal proceedings. Based on prior medical opinions, defense counsel's representations, and the Court's conversations with

5 – OPINION AND ORDER

Mr. Strauss, there was no evidence sufficient to raise a reasonable doubt as to Mr. Strauss's competency. A competency hearing was therefore not warranted. Mr. Strauss's § 2255 Motion fails on this ground.

## II. Ineffective Assistance of Counsel

Mr. Strauss argues that his attorney rendered ineffective assistance of counsel in the following ways: (1) failing to request a competency hearing; (2) misrepresenting that Mr. Strauss's maximum sentence would be 10 years and/or failing to seek a 10-year sentence cap as part of Mr. Strauss's plea bargain; and (3) failing to secure a mitigation specialist for sentencing. *See* Def.'s Mot. 2–7; Def.'s Suppl. Mot. 2–3.

To establish a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient such that it "fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687–88, 693 (1984). The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In the context of a claim for ineffective assistance as it relates to a guilty plea, the defendant must establish prejudice by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

As to Mr. Strauss's first claim that defense counsel failed to request a competency hearing, his claim fails for the same reasons discussed above. Mr. Strauss was restored to competency and remained medication compliant throughout his criminal proceedings. There was no change of circumstance that would have warranted a competency hearing. Mr. Strauss failed to demonstrate ineffective assistance of counsel on this ground.

As to Mr. Strauss's second claim that defense counsel misrepresented or failed to negotiate a 10-year sentence cap, his allegations find no support in the record. Mr. Strauss's plea agreement states that the Government would recommend a sentence no higher than 235 months of imprisonment. Plea Agreement ¶ 10. Defense counsel was free to seek any sentence deemed appropriate as well as a downward departure, adjustment, or variance. *Id.* ¶ 10–11. The plea agreement says nothing about a 10-year sentence cap that Mr. Strauss now claims he was promised. The agreement does, however, state that "[n]o promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court." *Id.* ¶ 17.

At the change of plea hearing, the Court explained that the maximum sentence for Mr. Strauss's charge was a life sentence. Change of Plea Tr. 15. The Court then confirmed the terms of the plea agreement, which included that his state charges would possibly be dismissed and the Government would recommend a sentence no higher than 235 months imprisonment. *Id.* at 18. Mr. Strauss confirmed his understanding of the terms of the plea agreement. *Id.* The Court further explained that despite any recommendations made by the Government, defense counsel, or the probation department, the Court is not bound by those recommendations. *Id.* at 18–19. Mr. Strauss again confirmed his understanding. *Id.* at 19–20. There was no mention of a 10-year sentence cap.

Despite no evidence of any 10-year sentence cap, Mr. Strauss now claims that defense counsel "misled [him] into believing he would not be sentenced to more than 10 years in prison if [he] entered in the plea agreement brokered by counsel." Def.'s Suppl. Mot. 2. "It is not enough for a defendant to claim that a promise was made, however; he must also show that his guilty plea rested in a significant degree on that promise." *United States v. Jackson*, 21 F.4th

7 – OPINION AND ORDER

1205, 1213 (9th Cir. 2022). The Court must "determine what the defendant reasonably believed to be the terms of the plea agreement at the time of his plea." *Id.* The terms of the written plea agreement and the statements made under oath during the plea colloquy are generally the best evidence of the defendant's reasonable belief. *Id.* ("Because the sworn statements during the plea colloquy 'speak[] in terms of what the parties in fact agree to,' . . . they 'carry a strong presumption of truth.'").

Based on the terms of Mr. Strauss's plea agreement and the discussion at his change of plea hearing, Mr. Strauss could not have reasonably believed that he was guaranteed only a 10-year sentence. Mr. Strauss's plea agreement stated that the Government would seek no more than a 235-month sentence and defense counsel was free to seek any length of sentence. The agreement repudiated any other promises outside of those set forth in the agreement itself. The Court confirmed the terms of the agreement with Mr. Strauss at the change of plea hearing.

Additionally, the Court explained that it was not bound by any recommendations from the Government or defense counsel. Even if defense counsel had led Mr. Strauss to believe that he would receive only a 10-year sentence under the plea agreement, Mr. Strauss confirmed his understanding at the hearing that the Court was not obligated to abide by any such term. The Court, in fact, reiterated to Mr. Strauss multiple times that the Court was not bound by any recommended sentence under the plea agreement, and explained that the Court could still choose to impose up to a life sentence. The Court specifically asked Mr. Strauss if he had any questions about that piece of the agreement.

Mr. Strauss's allegation that defense counsel led him to believe he would receive only a 10-year sentence under the plea agreement is belied by the record. His sworn statements of understanding at the hearing regarding the terms of his plea agreement and the Court's

sentencing obligations are entitled to a presumption of truth. *See Jackson*, 21 F.4th at 1213. Mr. Strauss's ineffective assistance of counsel claim on this ground fails.

Mr. Strauss's claim based on the failure to secure a 10-year sentence cap also fails. Def.'s Suppl. Mot. 2. Defense counsel negotiated a favorable plea agreement here. The maximum penalty for Mr. Strauss's charge was a life sentence and his sentencing guideline range was 235 to 293 months. PSR ¶ 75–76. Defense counsel secured an agreement by the Government to recommend the low-end of the sentencing guidelines and consider mitigating evidence before making a final recommendation, as well as dismissal of the state charges against Mr. Strauss if he received at least a 90-month sentence. Mr. Strauss cannot demonstrate that defense counsel's performance in negotiating a favorable plea deal fell below an objective standard of reasonableness.

Finally, Mr. Strauss claims that defense counsel was ineffective by failing to secure a mitigation specialist for sentencing. Mr. Strauss believes that "an unbiased mitigation specialist could have searched defendant's social media accounts, produced a solid report showing that defendant was hallucinating, and did not harbor any pre-meditation prior to his episode of obvious mania," as well as "pointed out empirical data showing the inculpatory statements made at the crime scene, were made while defendant was still in mania and unmedicated." Def.'s Suppl. Mot. 3. Mr. Strauss contends that the Court likely would have given Mr. Strauss a lesser sentence had defense counsel presented such evidence. *Id.*

Mr. Strauss ignores that defense counsel presented the very same mitigation evidence at the sentencing hearing. Defense counsel reviewed Mr. Strauss's social media and presented examples to the Court in order to highlight "how much of this was a manic episode versus how much is long-term, deeply held beliefs." Sentencing Tr. 5–7, ECF No. 38. Defense counsel noted

9 – OPINION AND ORDER

that Mr. Strauss "doesn't have a history of hate or condoning such violence and such hatred." *Id.* at 7. Defense counsel pointed to Mr. Strauss's interview shortly after the incident, as well as the Oregon State Hospital records and Dr. Millkey's report, to show that the incident was driven by a manic episode and that once Mr. Strauss got on medication, his aggressive behavior subsided. *Id.* at 9–11. Defense counsel submitted Dr. Millkey's forensic mental health evaluation to the Court prior to sentencing as mitigation evidence. Confidential Suppl. to PSR, Ex. 2, ECF No. 26. The Court ultimately sentenced Mr. Strauss to 192 months—43 months below the sentencing guidelines and 28 months below the Government's final recommendation—after considering the mitigating evidence of Mr. Strauss's mental health condition. Defense counsel effectively investigated and presented mitigation evidence in this case. Mr. Strauss failed to demonstrate that defense counsel's performance fell below an objective standard of reasonableness.

## CONCLUSION

Mr. Strauss's Motion and Supplemental Motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF Nos. 39, 60, 61) are DENIED.[3] Because Mr. Strauss has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

    DATED this 21st day of June, 2023.

                                                  /s/ Michael J. McShane
                                                  MICHAEL J. MCSHANE
                                                  U.S. District Judge

---

[3] Because the record conclusively shows that Mr. Strauss is entitled to no relief, his request for an evidentiary hearing is also denied. *See* 28 U.S.C. § 2255(b).